IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 20, 2006

**STATE OF TENNESSEE v. JEREMY S. CROSBY**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-C-1601     Steve Dozier, Judge**

---

**No. M2005-00548-CCA-R3-CD - Filed January 26, 2007**

---

Following a jury trial, Defendant, Jeremy S. Crosby, was convicted of possession of over .5 grams of cocaine with intent to sell and unlawful possession of drug paraphernalia.  He was sentenced to serve eighteen years in the Department of Correction for the cocaine conviction and eleven months, twenty-nine days for the paraphernalia conviction, for an effective sentence of eighteen years.  On appeal, he argues that the trial court erred in failing to grant his motion to suppress, and that he received ineffective assistance of counsel.  After a review of the record, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA McGEE OGLE, JJ. joined.

Michael Colavecchio, Nashville, Tennessee, (on appeal); and Ross E. Alderman, District Public Defender; Rebecca Warfield, Assistant Public Defender; and J. Michael Engle, Assistant Public Defender, Nashville, Tennessee, (at trial), for the appellant, Jeremy S. Crosby.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General;  Amy H. Eisenbeck, Assistant District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I.  Background**

On May 6, 2003, Scott Byrd of the Metropolitan Police Department responded to a drug complaint at the Pear Tree Inn, room 234.  Officer Byrd was a member of the Flex Unit which specialized in investigating drug complaints and other illegal activities in high crime areas.  When Officer Byrd arrived at room 234, he encountered several individuals, one of whom was Bryan Ward.

There was "drug activity" in the room, and Mr. Ward had drugs on his person. Mr. Ward was arrested but later released after receiving a misdemeanor citation. Mr. Ward told the officers he was not staying at the motel. When Officer Byrd went to the motel office to advise the clerk about what had occurred in room 234, he learned that Mr. Ward was a registered guest staying in room 430 at the motel.

At her request, Officer Byrd accompanied the motel office clerk to perform a "lock out" on room 430. After receiving no response from her knock, the motel clerk opened the door to the room. From the doorway, Officer Byrd saw two beds in the room. Michael Barnes was lying on the bed closest to the door, and Defendant was lying on the other bed. Officer Byrd saw a "tray sitting at the foot or partially underneath [Defendant's] bed with some marijuana seeds and marijuana residue on it." He also saw a box of sandwich bags sitting on the dresser to the right of the door.

Mr. Barnes and Defendant were placed under arrest. Officer Byrd conducted a search of their persons incident to their arrests. Defendant was in possession of a white substance which field-tested positive for cocaine. Officer Byrd *Mirandized* Defendant and asked him some questions. Defendant said he "pulled the cocaine off the nightstand and stuffed it in his pocket when he heard the knocking at the door, because he didn't know who was at the door." The officers at the scene also recovered a spoon containing a white residue, baking soda, and two sets of digital scales, one of which contained a white residue, and another bag containing a white substance which field-tested positive for cocaine.

Officer Byrd testified that sandwich bags, like the ones recovered from the motel room, were typically used to package drugs. He also explained that scales are "used to weigh out the amount of drugs . . . . For the purpose of packaging them for the purposes of sale." One set of scales was found on the dresser in close proximity to the sandwich bags. Officer Byrd said that baking soda was "generally used as a cutting agent or an agent to help mix in with the cocaine." The cocaine found in the room was in powder form.

Officer Kristina Vivrette was called to the scene as back-up for Officer Byrd. At trial, she testified that she was the last one to arrive at the motel room where Defendant was arrested. She was aware that the room had been rented by Mr. Ward. She said that it was common for someone to rent a motel room and then "set up somebody to sell the drugs for them out of the room." While investigating the motel room, Officer Vivrette noticed a sock behind the nightstand. She picked up the sock and discovered that it contained a bag of cocaine larger than the bag that was initially found. She said that digital scales had also been found inside the drawer of the nightstand.

Kathy Carman, a forensic investigator with the Tennessee Bureau of Investigation, conducted lab tests on the two bags of white powder taken from the scene. She testified that the substance found in each bag was cocaine. One bag of cocaine weighed one point five three (1.53) grams, and the other bag was point nine four (.94) grams, for a total amount of two point four (2.4) grams.

Michael Barnes testified that he went to the Pear Tree Inn on the night of the incident to "get some powder" from Brian Ward. When he arrived at the motel room he knew to be Mr. Ward's, Defendant was the only person present in the room. It was Mr. Barnes' understanding that Mr. Ward had left the room to get some cocaine. When Mr. Ward returned, Mr. Barnes bought "thirty dollars worth of powder" from him. He identified the smaller of the two bags of cocaine recovered from the scene as the cocaine he purchased from Mr. Ward. Mr. Barnes denied any knowledge of the other bag of cocaine found in the sock behind the nightstand. He said that the baking soda and the spoon found at the scene belonged to him. He had a girlfriend bring the baking soda to the motel room so that he could "cook crack cocaine" on the spoon. He said that "a junkie uses a spoon," and one gram would be the maximum amount that could be cooked in a spoon. Mr. Barnes said that the scales and the marijuana seeds were already in the motel room when he arrived.

While he was waiting to get the cocaine from Mr. Ward, Mr. Barnes drank a bottle of vodka with Defendant and got "staggering drunk." As a result of the alcohol, he passed out on the bed before he had an opportunity to use the cocaine. He purchased the cocaine before he passed out, but left the cocaine laying on the nightstand while he was asleep. He said that Defendant did not use cocaine, and he was not worried about him taking the cocaine. Additionally, he said that the room belonged to Mr. Ward and anybody who needed any drugs could get them from Mr. Ward and would not need to steal his drugs. According to Mr. Barnes, he and his girlfriend, Mr. Ward, and Defendant, were the only individuals in the room during that time. Mr. Barnes said that there were numerous knocks on the door, but he and Defendant did not answer the door. Mr. Ward came "in and out a few times" before the police came to the room.

Detective Jesse Burchwell of the Metropolitan Nashville Police Department testified as an expert on drugs and drug investigation. Detective Burchwell said that the spoon recovered from the motel room had a white powdery substance inside the spoon and the backside of the spoon looked as though it had been burned. He said that he had seen spoons in a similar condition in drug houses and in the possession of individuals who use and sell drugs. According to Detective Burchwell, the spoons are used to cook a small amount of powder cocaine into crack cocaine by using a lighter as the heat source. He said that when an individual is found in a motel room, with a large quantity of cocaine and a spoon but no crack pipe, the assumption would be that the individual is manufacturing crack cocaine and selling it out of the room. Detective Buchwell could not define what constitutes a "large quantity of cocaine."

## II. Suppression Hearing

Prior to trial, Defendant filed a motion to suppress the evidence obtained as a result of the officers' warrantless entry into the motel room. The proof presented at the suppression hearing was essentially the same proof presented at trial with the exception of Defendant's testimony. The State objected to Defendant's standing to protest the search, arguing that he could not assert a privacy interest in the motel room. In response, Defendant testified that he had a Play Station Two, a gold necklace, a gold ring, his clothes, bag, and his mail in the motel room. He also said that he had over three-hundred dollars in his pocket when he was arrested. Defendant said that he arrived at the motel

room approximately three days before he was arrested. He said that he and Mr. Ward went to school together, and Mr. Ward gave him the motel room because he needed a place to live and Mr. Ward no longer needed the room. Defendant said that Mr. Barnes had been in the motel room as long as Defendant, and that Defendant had been paying their motel bill. He said that the motel was aware that he was staying in the room, but he did not transfer the room into his name because he did not have valid identification.

### III. Motion for New Trial

Following his conviction, Defendant filed a motion for new trial in which he included the issue that he had received ineffective assistance of counsel. At the motion for new trial hearing, Mr. Ward testified that he rented room 430 at the Pear Tree Inn for one day. When he decided not to use the room, Defendant offered to take the room and reimburse Mr. Ward for his expenses. Mr. Ward agreed and helped Defendant take his Play Station Two and a trash bag full of clothes to the motel room. Mr. Ward was not aware that the room remained rented in his name for several days. He never saw Defendant pay money to the motel clerk to rent a room. He said he was at the motel three days later visiting a friend, not staying in room 430, when he received a citation and was ordered to leave the premises. Following Defendant's arrest, Mr. Ward helped Defendant's girlfriend retrieve Defendant's belongings from the motel. Mr. Ward said that nothing in the motel room belonged to him.

Defendant testified that he was represented at trial by Rebecca Warfield, and that she never came to see him while he was incarcerated. He said that his only contact with Ms. Warfield was during court appearances. They never had a private conversation during these meetings because Defendant was in a holding cell. He said that he was never interviewed by an investigator from the public defender's office.

According to Defendant, Ms. Warfield advised him that he would lose if he went to trial. He said that he asked her to subpoena Brian Ward to testify on his behalf at the suppression hearing and she refused to do so. He said that trial counsel also refused to file a motion to sever the trial of Defendant and his co-defendant and to file a motion to independently test the evidence against him. Defendant said that an independent test should have been conducted because more than one bag of cocaine was taken from the room, but only a single sample was tested.

Defendant said that trial counsel failed to obtain the identify of the clerk at the Pear Tree Inn or to question that clerk as to whether Defendant had paid for the motel room everyday. He likewise complained that trial counsel did not question other individuals from the motel who could verify that he stayed there frequently and was renting room 430 at the time of his arrest. He did not know the night clerk who let Officer Byrd into the motel room on the night of the incident, nor did he see her in the room that night. Defendant said that the only defense witness trial counsel subpoenaed to testify was Detective Jesse Burchwell, and he did not feel the testimony was helpful to his case.

Defendant said he was employed at Nashville Mobile Products at the time of his arrest, but he worked "whenever" he wanted to because he and his boss were friends. He said that his mailing address was Xavier Drive, Antioch, Tennessee, but admitted that he "basically" floats around from motel to motel with a bag of clothing and money to pay for a room. He maintained that the drugs found in his pocket belonged to Michael Barnes, and that he was not using drugs the night of the arrest. He denied that he was cooking or selling crack cocaine in the motel room.

## IV. Analysis

### A. Motion to Suppress

Defendant first argues that the trial court erred in failing to grant his motion to suppress the evidence found as a result of Officer Byrd's warrantless search of the motel room. The State asserts that Defendant does not have standing to challenge the search because he did not demonstrate a legitimate expectation of privacy in the motel room. Defendant argues that he had a legitimate expectation of privacy in the motel room because he had personal belongings in the room, and because he paid for the room on the night of the arrest and one night prior to the night of the arrest. He further argues that the motel clerk was acting as an agent for the State when she opened the door to the room, and the search was illegal because the officer and the clerk lacked probable cause to enter the room without a warrant.

When the trial court makes findings of fact at the conclusion of a suppression hearing, the facts are accorded the weight of a jury verdict. *State v. Stephenson*, 878 S.W.2d 530, 544 (Tenn. 1994). The trial court's findings are binding upon this court unless the evidence in the record preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Questions of credibility of witnesses, the weight and value of the evidence, and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence. *Odom*, 928 S.W.2d at 23. The application of the law to the facts, however, requires *de novo* review. *State v. Daniel*, 12 S.W.3d 420, 423-24 (Tenn. 2000). Likewise, if the evidence does not involve a credibility assessment, the reviewing court must examine the record *de novo* without a presumption of correctness. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). Review is not limited to the record of the suppression hearing; rather, it extends to the entire record of proceedings. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution, provide protection for citizens against "unreasonable searches and seizures." "The essence of the prohibition against unreasonable searches and seizures under the Fourth Amendment is to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S. Ct. 1727, 1730 (1967)); *see also State v. Zagorski*, 701 S.W.2d 808, 812 (Tenn. 1985) ("Fourth Amendment protection is inapplicable to a search or seizure

effected by a private individual not acting as an agent of the government or with the participation or knowledge of any government official."). Consequently, the Fourth Amendment acts as a restraint only on government actors.

"The Fourth Amendment protects legitimate expectations of privacy rather than simply places." *Illinois v. Andreas*, 463 U .S. 765, 771, 103 S. Ct. 3319, 3324 (1983). "One who challenges the reasonableness of a search or seizure has the initial burden of establishing a legitimate expectation of privacy in the place where property is searched." *State v. Oody*, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 105-06, 100 S. Ct. 2556, 2561-62 (1980); *State v. Roberge*, 642 S.W.2d 716, 718 (Tenn. 1982)). Accordingly, when evaluating whether a particular defendant's Fourth Amendment rights have been violated, we look to two inquiries: (1) whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy," and (2) whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable.'" *State v. Ross*, 49 S.W.3d 833, 840 (Tenn. 2001) (citing *Katz v. United States*, 389 U.S. 347, 361, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (Harlan, J., concurring)). The same protection enjoyed by a citizen in his home is extended to a citizen in a "motel room and other temporary living spaces." *Ross*, 49 S.W.3d at 840.

In the present case, the trial court found as follows:

> The State's position is that the defendant does not have standing to contest the search of room 430. This Court agrees. The proof was re-opened to hear testimony from the defendant regarding his standing. The defendant testified that he had a video game system and other items of personalty in room 430. One who challenges a search or seizure has the initial burden of establishing a legitimate expectation of privacy in the place or thing to be searched. *State v. Oody*, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991). One who does not have such expectation of privacy lacks standing to challenge the search. *See State v. Patterson*, 966 S.W.2d 435, 441 (Tenn. Crim. App. 1997). There are seven factors to be considered when determining if a legitimate expectation of privacy exists:

>> (1) ownership of the property; (2) whether the defendant has a possessory interest in the thing seized; (3) whether the defendant has a possessory interest in the placed [sic] searched; (4) whether the defendant has the right to exclude other[s] from the place; (5) whether he has exhibited a subjective expectation that the place would remain free from intrusion by the state; (6) whether the defendant took normal precautions to maintain his privacy; and (7) whether he was legitimately on the premises. *Oody*, 823 S.W.2d at 560.

> The fact that a person is an overnight guest in a residence or in an apartment, standing alone, is sufficient to clothe the guest with a legitimate expectation of privacy in the premises sufficient to challenge the search or any resulting seizure.

*See Minnesota v. Olson*, 495 U.S. 91 (1990). However, a "casual visitor" or a "transient party guest" does not have a reasonable expectation in the host's residence or apartment. *See United States v. Dix*, No. 94-4065, 1995 WL 351182 (6th Cir., June 9, 1995) ("As a casual, albeit frequent, visitor to his sister's apartment, who did not keep clothing there, who did not receive mail there, and who had no key, Dix had no reasonable expectation of privacy in the premises.["]); *See also State v. Nash*, 2002 WL 1905328 (Tenn. Crim. App. 2002). The Court did not hear any testimony that the defendant has any ownership interest in the motel room, nor was there any proof that the defendant had the right to exclude others.

Notwithstanding the Court finds that the defendant lacks standing to contest the search, the search of room 430 is nonetheless a constitutional search. It is well settled that under both the federal and state constitutions, warrantless searches and seizures are presumed to be unreasonable. *See State v. Keith*, 978 S.W.2d 861, 865 (Tenn. 1998). It is the burden of the State to prove by a preponderance of the evidence that the search or seizure falls under a recognized exception to the warrant requirement. *Id*. at 865. The applicable exception in this case is found in the plain view doctrine. The Court has stated that the plain view doctrine applies when (1) the items seized were in plain view; (2) the viewer had the right to be in the position to view the items; (3) the items seized were inadvertently discovered; and (4) the incriminating nature of the items was immediately apparent. *State v. Hawk*, 969 S.W.2d 936, (Tenn. Crim. App. 1997).

Turning to the facts of this case, Officer Byrd testified that the apartment manager asked him if he would care to accompany her to perform a lock out on room 430. According to the testimony, the officer did not enter the threshold of the dwelling until he observed the items of contraband in plain view. The apartment manager, who is not a state agent, opened the door to the apartment without any prompting by the officer. The Court finds that the officer was lawfully in a position to view the items in plain view when the door opened. Therefore, the defendant's motion to suppress should be respectfully denied.

We find nothing in the record which preponderates against the trial court's findings. In our view, the trial court properly applied the seven-factor test for determining whether an individual has exhibited an actual, subjective expectation of privacy and, therefore, has "standing" to contest a search or seizure. *See Oody*, 823 S.W.2d at 560; *State v. Turnbill*, 640 S.W.2d 40, 46 (Tenn. Crim. App. 1982). The Tennessee Supreme Court has characterized this test as a "totality of the circumstances approach." *Ross*, 49 S.W.3d at 841. Despite Defendant's contentions to the contrary, there was no evidence that Defendant had a possessory interest in the rooms. No one saw Defendant pay the motel clerk to rent the motel room. He never transferred the motel room into his name. There was no evidence to indicate how long Defendant had actually been staying in the motel room, nor any witnesses who testified that they had seen Defendant occupying the room for a period of consecutive days. Nor was there any testimony that Defendant had acted to prevent anyone from

entering the motel room. In fact, when the officer inquired as to Defendant's address, he gave the officer a home address of 4593 Xavier Drive, Antioch, Tennessee. Although Defendant had property in the room, a Play Station Two, some mail, and various items of clothing, the trial court did not find this sufficient to indicate Defendant had an expectation of privacy in the room. We agree with the trial court.

Furthermore, we agree with the trial court's finding that the search was within the "plain view" exception to the warrant requirement. As noted by the trial court, a warrantless search is generally presumed unreasonable, thus violative of constitutional protections. *State v. Bartram*, 925 S.W.2d 227, 229-30 (Tenn. 1996) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 2032, 29 L. Ed.2d 564 (1971)). As the trial court also noted, the "plain view" doctrine is one of the well-recognized exceptions to the warrant requirement. *State v. Bartram*, 925 S.W.2d at 230. If the circumstances of a challenged search fall within this recognized exception, the fruits of that search are not subject to operation of the exclusionary rule and may be properly admitted into evidence. *State v. Shaw*, 603 S.W.2d 741, 743 (Tenn. Crim. App. 1980). The State has the burden of establishing that the search was conducted pursuant to an exception to the warrant requirement. *State v. McClanahan*, 806 S.W.2d 219, 220 (Tenn. Crim. App. 1991). If the State fails to satisfy its burden, the exclusionary rule may operate to bar the admissibility of any evidence obtained directly or derivatively from the unconstitutional search. *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S. Ct. 407, 416, 9 L. Ed.2d 441 (1963); *State v. Clark*, 844 S.W.2d 597, 600 (Tenn. 1992).

The trial court correctly set forth the requirements of the plain view doctrine. The evidence shows the items that Officer Byrd observed were in his plain view. Officer Byrd testified that he accompanied the motel clerk to room 430 to perform a "lock out" at her request. After receiving no response to her knocks on the door, the motel clerk opened the motel room door to proceed with the "lock out." The clerk opened the door of her own volition, and was not acting at the officer's request, or as a state agent when she did so. While he was lawfully standing outside the door to the motel room, Officer Byrd shined his flashlight into the room and saw marijuana seeds and a substance resembling marijuana on a tray that was protruding from under the bed. He also observed sandwich bags and scales on top of the dresser. Based on his experience, Officer Byrd identified the items as drug paraphernalia used in the distribution and sale of drugs, thus providing him with probable cause to arrest the occupants of the room. *See State v. Cothran*, 115 S.W.3d 513, 524 -525 (Tenn. Crim. App. 2003).

After waking the occupants of the motel room, Officer Byrd placed them under arrest based on the items in plain view. He then conducted a search of their persons incident to that arrest. The search revealed that Defendant had cocaine in his front pocket. In addition to the plain view doctrine, a contemporaneous police search following a lawful custodial arrest is an exception to the warrant requirement. *State v. Crutcher*, 989 S.W.2d 295, 300 (Tenn. 1999). The officer may conduct a search of the person arrested and the immediate surrounding area. *Id.* A search may precede a formal arrest if the police officer had probable cause to arrest at the time of the search, and the items seized as a result of the search were not necessary to support probable cause to arrest. *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S. Ct. 2556, 2564, 65 L. Ed. 2d 633 (1980).

Accordingly, Officer Byrd was justified in searching the person of the occupants and the immediate area incident to their arrests. Because the search was conducted contemporaneous with the arrest, the search was a valid search, and the officer lawfully seized the drugs found in Defendant's pocket as a result of the search. The drugs found in the floor behind the night stand were likewise lawfully seized. We conclude that the officer had probable cause to arrest the occupants based on the items in plain view, and that as a result of the search incident to the arrest, he properly seized the drugs. *Cothran*, 115 S.W.3d at 526. Defendant is not entitled to relief on this issue.

## B. Ineffective Assistance of Counsel

Defendant next argues that the trial court erred in failing to find that he received ineffective assistance of counsel. Specifically, he argues that trial counsel was ineffective in (1) failing to subpoena Brian Ward to testify at the motion to suppress hearing and at trial; (2) failing to meet with Defendant privately prior to trial; (3) failing to identity and subpoena the motel clerk who Defendant allegedly paid his rent to each day; (4) failing to object to the hearsay testimony by Officer Byrd relating to his conversation with the motel clerk; and (6) ignoring the "convoluted testimony" as related to the number of bags of cocaine recovered from the motel room and the exact locations of the bags of cocaine when they were discovered by law enforcement."

We first note that claims of ineffective assistance of counsel are generally more appropriately raised in a petition for post-conviction relief rather than on direct appeal. *See State v. Carruthers*, 35 S.W.3d 516, 551 (Tenn. 2000); *see also State v. Anderson*, 835 S.W.2d 600, 606 (Tenn. Crim. App. 1992) ("Raising issues pertaining to the ineffective assistance of counsel for the first time [on direct appeal] in the appellate court is a practice fraught with peril."). However, because there is nothing barring a defendant from bringing an ineffectiveness claim in a direct appeal, we will proceed with our analysis of Defendant's claim.

Under Tennessee Code Annotated section 40-30-110(f) (2003), a defendant seeking post-conviction relief on the basis of ineffective assistance of counsel is required to prove his or her allegations "by clear and convincing evidence." This same standard should apply even when the claim of ineffective assistance of counsel is raised on direct appeal. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999) (citing *State v. Anderson*, 835 S.W.2d 600 (Tenn. Crim. App. 1992)). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. *Brooks v. State*, 756 S.W.2d 288-89 (Tenn. Crim. App. 1988).

When a defendant seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). He must then show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). The error must be so serious as to render an unreliable result. *Id.* at 687. Should the petitioner fail to establish either factor, he is not entitled to relief. "Because a petitioner must

establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the defendant is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). When reviewing the application of law to the trial court's factual findings, our review is *de novo*, and the trial court's conclusions of law are given no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001).

Defendant first argues that counsel was ineffective for failing to call Mr. Ward to testify at the suppression hearing or at trial. Defendant contends that Mr. Ward's testimony would have established that Defendant had standing to contest the search because he had been staying in and paying for the motel room for several days. The trial court found

> Mr. Ward's testimony would not have been admissible [to prove standing] because he testified that he was not at the motel every night and could not verify that the defendant was the one in fact paying for the room each day. Therefore, Mr. Ward had no personal knowledge that the defendant was the one paying for the room. He could only assume that he was. The admissible testimony of Mr. Ward actually confirms the defendant's lack of standing. Additionally, the defendant has not made available the motel clerk or records from the motel for purposes of this hearing and the Court finds that this issue is therefore waived.

We agree with the trial court that Defendant has failed to carry his burden by failing to demonstrate how he was prejudiced by the fact that Mr. Ward did not testify. Mr. Ward's testimony at the hearing on the motion for new trial did not aid in establishing Defendant's standing to contest the search of the motel room. It established only that Defendant gave Mr. Ward money to stay in the motel room for one night and that Mr. Ward helped Defendant carry some of his belongings into the room.

Defendant next argues that trial counsel was ineffective for failing to meet with Defendant privately prior to trial. The trial court found

> [D]efendant testified that he saw his trial attorney on days he was in court and in the holding cells, where there were other inmates around during their conversations. The Court is of the opinion that trial counsel did keep the defendant properly advised of

the case and did adequately communicate with him. Additionally, on the record is an excerpt of the proceedings where trial counsel announced that she had advised defendant not to proceed to trial based on the Court's rulings on the motions to suppress and dismiss. Tran. Pg. 1, lines 1-9. After being advised of the potential range of punishment and the manner in which it would be served in connection with his other cases, the defendant will [sic] wanted to proceed to trial. Tran. Pg. 1, lines 9-12.

There was no testimony from trial counsel at the hearing on the motion for new trial. Defendant provided the only testimony regarding this issue. There was no further proof introduced to show that trial counsel failed to keep Defendant properly apprised of his case or to render advice as to how to proceed with his case. No evidence was presented to show how additional meetings or more private meetings would have changed the outcome of Defendant's trial. There is nothing in the record which preponderates against the trial court's findings. Therefore, we conclude that Defendant has failed to show how he was prejudiced by a lack of private meetings with his trial counsel.

Defendant next contends that counsel was ineffective for failing to identify and subpoena the motel clerk who Defendant allegedly paid his rent to each day. Defendant argues again that had the motel clerk been identified and called to testify, the clerk would have established his standing to contest the search. In our opinion, Defendant has not shown how he was prejudiced by trial counsel's failure to subpoena the motel clerk to testify. The motel clerk did not testify at the motion for new trial hearing, no motel records were introduced to show Defendant paid for the room, and no witnesses testified that they saw Defendant paying the motel clerk. Defendant offered only his own testimony as evidence that he paid for the motel room and therefore had standing to contest the search. Additionally, the trial court found that "[a]ssuming arguendo that the defendant had standing to contest the search, the Court is of the opinion that the search was not illegal based on the Fourth Amendment as addressed earlier in the defendant's first issue. Therefore, any error in failing to locate the motel clerk would be harmless error. The court is of the opinion that this issue is without merit."

Defendant next argues that trial counsel was ineffective in failing to object to the hearsay testimony offered by Officer Byrd relating to his conversation with the motel clerk. Defendant fails to cite any specific portion of the record as hearsay and further fails to allege how he was prejudiced by counsel's alleged failure to object to the hearsay. The trial court stated:

The defense argues that the testimony by Officer Byrd regarding the motel clerk was hearsay and attempted to establish that the motel room in question belonged to Brian Ward, and not to the defendant. The Court has reviewed the area of Officer Byrd's testimony wherein the defendant alleged the hearsay occurred. The Court finds that the statement "It was at that point in time in discussing with the Clerk what we found in the room that we discovered that this Brian Ward subject, who was up in this other room has a room registered, as well, I believe it was Room 430" is not hearsay since

-11-

it was being offered to show why the police went to Room 430 with the motel clerk. Tran. Vol. 1, Pg. 2, lines 21-24. Accordingly, the defendant's argument that trial counsel was ineffective must fail.

The trial court concluded that the purported hearsay statement was not hearsay because it was not offered for the truth of the matter asserted. In so doing, the court implied that had an objection been made by trial counsel, it would have been overruled. *If* trial counsel had objected, and *if* the State had argued that the statement was not hearsay, and *if* the trial court had ruled as implied, any error in the evidentiary ruling would be harmless error, and therefore we agree with the trial court that Defendant has not shown that he was prejudiced by trial counsel's failure to object to Officer Byrd's statement. Consequently, he has not shown that trial counsel was ineffective with respect to this issue.

Finally, Defendant argues that trial counsel was ineffective because he ignored the "convoluted testimony as it relates to the number of bags of cocaine, and the exact locations [of the bags] when discovered by law enforcement, in the room." Defendant argues that although two or three bags of cocaine were discovered in the motel room, the lab report from the Tennessee Bureau of Investigation indicated only one sample was submitted for testing. The trial court found as follows:

> The defense alleges that based on the arrest affidavits, there appears to be 3 bags of cocaine but the lab report indicates only two. The defense argues that the bags must have been "mixed" and that this results in the destruction of evidence critical to the defense. Testimony by Officer Byrd at both the motion to suppress hearing and at trial indicate there were two bags containing cocaine. Additionally, the testimony at the suppression hearing is that both bags field tested positive for cocaine base. The court affirms its previous ruling on this issue and is of the opinion this issue is without merit."

Defendant has not demonstrated counsel's performance was below the required standard with respect to this issue. Nor has he shown how he was prejudiced by counsel's actions. We agree with the trial court and conclude that this issue is without merit.

With respect to all claims raised regarding his alleged ineffective assistance of counsel, Defendant has failed to demonstrate that counsel was deficient in his representation or that he was prejudiced by counsel's performance. Accordingly, Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
THOMAS T. WOODALL, JUDGE